[L.A. No. 31581. May 31, 1983.]

EL RANCHO UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v.
NATIONAL EDUCATION ASSOCIATION et al.,
Defendants and Respondents.

COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Paul M. Loya and Brian M. Libow for Plaintiff and Appellant.

Michael R. White, Kirsten L. Zerger, Raymond L. Hansen, Penn Foote, Henry R. Fenton and Levy & Goldman for Defendants and Respondents.

Dennis Sullivan, Jeffrey Sloan, Elaine B. Feingold and Andrea L. Biren as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**BIRD, C. J.**—Does the Public Employees Relations Board (PERB) have exclusive jurisdiction over a school district's complaint for damages resulting from a teachers' strike led by noncertified employee organizations?

## I.

This case, which began in the trial court over five years ago, is still in the pleading stage. It was before this court on one prior occasion. Although it has a complicated procedural history, the events giving rise to the litigation are essentially without controversy.

Plaintiff is the El Rancho Unified School District (District). Defendants are four labor unions—the National Education Association, its affiliates, the California Teachers Association and the El Rancho Education Association, and the California Federation of Teachers and its affiliate, the El Rancho Federation of Teachers (Unions).

When the students enrolled in the District returned to school in the fall of 1976, they were met with a teachers' strike in which a large number of the District's teachers participated. The strike, which was called for and led by the Unions, lasted from the first day of school, September 13, 1976, until October 7, 1976, and allegedly cost the District over $1 million. At the time of the strike, none of the Unions had been recognized or certified as the exclusive representative of the District's teachers under the then newly enacted Education Employment Relations Act (EERA). (Gov. Code, § 3540 et seq.)[1]

---

[1] All statutory references are to the Government Code unless otherwise indicated.

For ease of reference, an employee organization which has neither been recognized nor certified as an exclusive representative under EERA will be referred to as a "noncertified" employee organization or union. (See §§ 3540.1, subds. (b), (e) and (*l*), 3544.1, 3544.7.)

On March 31, 1977, the District filed an unfair practice charge with PERB, claiming that the Unions twice violated EERA during the strike. The District claimed that the Unions violated section 3543.6, subdivision (b) of EERA[2] by engaging in threatening, coercive, and intimidating conduct towards its teachers during the allegedly illegal strike. Such conduct, the District asserted, constituted unlawful interference with the teachers' exercise of their rights "to refuse to join or participate in the activities of employee organizations," and "to represent themselves individually in their employment relations with [a] public school employer." (§ 3543.)[3] In addition, the District charged the Unions with violating subdivision (a) of section 3543.6[4] by demanding that the District meet and negotiate with them despite the fact that all were noncertified. According to the District, such action constituted an attempt to cause the District to interfere with the teachers' exercise of their alleged right to be represented in negotiations only by an exclusive bargaining agent of their choice. (See §§ 3543, 3543.3.)[5]

On June 15, 1977, PERB's general counsel ordered the first of the unfair practice claims dismissed without leave to amend after concluding that the District lacked standing to assert its employees' rights. The District appealed and on December 30, 1977, PERB reversed this ruling and remanded the case to the general counsel for settlement or hearing. (See *El Rancho Federation of Teachers, et al.* (Dec. 30, 1977) EERB Dec. No. 45.)

On September 30, 1977, while its PERB appeal was still pending, the District filed the present tort action against the Unions in the Los Angeles County Superior Court. Seeking actual damages of $1.1 million and punitive damages of $10 million, the District charged the Unions with (1) inducing the El Ran-

---

[2]Section 3543.6 subdivision (b) provides: "It shall be unlawful for an employee organization to: . . . [¶] (b) . . . interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by [EERA]."

[3]Section 3543 reads in pertinent part as follows: "Public school employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public school employees shall also have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public school employer, except that once the employees in an appropriate unit have selected an exclusive representative . . . , no employee in that unit may meet and negotiate with the public school employer."

[4]Subdivision (a) of section 3543.6 provides: "It shall be unlawful for an employee organization to: [¶] (a) Cause or attempt to cause a public school employer to violate Section 3543.5."

Section 3543.5 provides in pertinent part: "It shall be unlawful for a public school employer to: [¶] (a) . . . interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by [EERA]."

[5]The text of section 3543 is set forth in footnote 3, *ante,* Section 3543.3 provides: "A public school employer . . . shall meet and negotiate with and only with representatives of employee organizations selected as exclusive representatives . . . ."

cho teachers to breach their employment contracts; (2) engaging in an illegal strike "whereby [the Unions] coerced or otherwise induced [the teachers] to refrain from rendering services" to the District; and (3) conspiring to coerce and coercing the District to negotiate with the Unions in violation of section 3543.3 of EERA (see *ante,* fn. 5).

The Unions demurred to the complaint on the ground that the court lacked jurisdiction of the subject matter of the action. (See Code Civ. Proc., § 430.10, subd. (a).) ▮ ▮▮▮ More specifically, after properly invoking judicial notice of the PERB proceedings,[6] the Unions argued that PERB had exclusive jurisdiction over the dispute since it arguably involved unfair labor practices.

In support of their argument, the Unions directed the court's attention to section 3541.3 of EERA which vests PERB with the power "[t]o investigate unfair practice charges or alleged violations" of the act, and to section 3541.5, which declares that "[t]he initial determination as to whether . . . charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of [the act], shall be a matter within the exclusive jurisdiction of [PERB]."

The Unions' demurrers were overruled on March 15, 1978. Undeterred, they petitioned the Court of Appeal for a writ of prohibition commanding the trial court to dismiss the action. Alternative writs were issued, but on July 19, 1978, the appellate court continued the hearing on the writs pending this court's decision in *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838], a case involving similar issues.

The decision in *San Diego Teachers* was filed in April of 1979. In it, this court held that PERB had exclusive jurisdiction over a school district's action to enjoin an allegedly illegal strike led by an exclusive representative, since the strike arguably constituted an unfair practice under EERA. (*Id.,* at p. 14.) However, this holding was explicitly limited to actions seeking "injunctions against strikes by public school employee organizations recognized or certified as exclusive representatives." (*Ibid.,* citation omitted.)

---

[6]"A demurrer reaches not only the contents of the challenged pleading itself, but also such matters as may be properly considered under the doctrine of judicial notice." (*Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 47 [170 Cal.Rptr. 533]; accord *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241]; see generally 9 Grossman & Van Alstyne, Cal. Practice (2d ed. 1981) Pleading, § 1291 et seq., pp. 21-28.) Such matters include the orders, regulations, decisions and records of state administrative agencies. (Evid. Code, § 452, subd. (c); *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 622-623 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259, 263 [177 Cal.Rptr. 888] [judicial notice taken of PERB records]; *Pratt* v. *Local 683, Film Technicians* (1968) 260 Cal.App.2d 545, 562 [67 Cal.Rptr. 483].)

Following this decision, the Court of Appeal discharged the alternative writs issued in this case and denied the Unions' petitions. The only reason given for its action was this: "In light of the decision in *San Diego Teachers* . . . , relief by extraordinary writ is no longer indicated."

Confronted with this unquestionably cryptic order, the Unions filed a petition for rehearing. When it was denied, they petitioned for hearing in this court. By order filed September 26, 1979, their petition was denied "without prejudice to [their] right to seek reconsideration by the trial court of its prior rulings in light of the intervening decision of *San Diego Teachers* . . . ."

Thus armed, the Unions returned to the trial court and promptly moved for reconsideration of the order overruling their demurrers. The trial court reconsidered its ruling and on January 14, 1980, sustained the demurrers but gave the District leave to amend.

The District subsequently filed an amended complaint. The first three causes of action in the amended complaint are virtually identical to the three causes of action stated in the original complaint. The only additions or deletions of interest are these. First, the District eliminated the allegation that the Unions *coerced* the teachers into participating in the strike. Instead, the amended complaint merely avers that the Unions "encouraged, advised, and induced" the teachers to strike.

Second, the District added to the first and third causes of action an allegation stating that the District's unfair practice charge was "dismissed" by PERB and "such dismissal was stipulated by the parties to be without prejudice to [the District] in this litigation."[7] In addition, the third cause of action now charges the Unions with conspiring to coerce and coercing the District not only to negotiate with the Unions in violation of section 3543.3 but also to enter into a collective bargaining agreement with them.

---

[7]The record provides no information regarding the actual disposition of the District's unfair practice charge. However, the briefs filed in this court evidence substantial agreement as to the actual disposition. (See generally, 6 Witkin, Cal. Procedure (2d ed. 1971) § 428, p. 4394 [regarding admissions in briefs].)

PERB states in its amicus brief that the District "voluntarily withdrew its charge without prejudice." The Unions assert that "on May 8, 1978, pursuant to an agreement whereby the District recognized the El Rancho Federation of Teachers as the exclusive representative of the El Rancho teachers, the District voluntarily withdrew the charge . . . , without prejudice to any rights it may have had in any other proceedings." In its brief, the District states only that "PERB was aware of the judicial proceeding and that the *request* to dismiss the charge was made with the specific condition that the charge be dismissed without prejudice to [the District] in the court action." Thus, it is evident that the PERB proceedings were terminated at the request of the District and that no decision was rendered regarding the merits of the unfair practice charge.

The actual disposition of the charge may, of course, properly be considered by this court

Finally, the District added a fourth cause of action. That cause charges the Unions with conspiring to cause and causing a violation of the California Compulsory Education Law by making it impossible for students to attend school by means of the allegedly illegal strike. (See Ed. Code, § 48200.)[8]

The Unions again demurred, and on July 15, 1980, the trial court finally sustained their demurrers without leave to amend and dismissed the action.[9] Their victory, however, was short-lived.

The District appealed, and the Court of Appeal reversed the judgment insofar as it dismissed the first and second causes of action. Although the Court of Appeal agreed that *San Diego Teachers* was controlling, it concluded that PERB had no jurisdiction over the Union's strike activity because there was no arguable basis on which the strike could be found to constitute an unfair practice under EERA. In all other respects, the trial court's judgment was affirmed.

This court granted the Union's petition for hearing because of the importance of the issues presented.[10]

## II.

The principal issue presented by this appeal is whether EERA divests a superior court of jurisdiction to entertain a school district's tort suit for damages arising out of a teachers' strike led by noncertified unions.

In *San Diego Teachers, supra,* 24 Cal.3d 1, this court held that PERB has exclusive jurisdiction over actions to enjoin strikes by public school employee

---

whether or not it was brought to the attention of the trial court. (See *ante,* fn. 6; Evid. Code, § 459, subd. (a) [a reviewing court "may take judicial notice of any matter specified in (Evidence Code) Section 452"].)

[8]Education Code section 48200 provides in pertinent part that "[e]ach person between the ages of 6 and 16 years not exempted under the provisions of this chapter is subject to compulsory full-time education. . . ."

[9]The trial court's order reads as follows. "Lack of jurisdiction—The Court reads San Diego Teachers Assn. . . . , as requiring a holding here that PERB had initial jurisdiction, notwithstanding the allegations here that none of the defendants were certified as the exclusive representative and that there was no collective bargaining agreement in effect, and also notwithstanding the fact that damages are alleged here. [¶] 4th cause of action—General demurrer based on lack of standing sustained. [¶] Counsel for plaintiff having stated that plaintiff does not desire to amend its pleading the demurrers are sustained without leave to amend."

[10]At no time during the course of its appeal has the District challenged the trial court's sustaining of the demurrer to its fourth cause of action on the grounds that it lacked standing to assert a violation of Education Code section 48200. The District having abandoned this claim, it will not be considered here.

organizations recognized or certified as exclusive representatives under EERA. (*Id.,* at p. 14.) This case, of course, concerns a suit for compensatory and punitive damages, not injunctive relief based on a strike led by noncertified employee organizations. Our holding in *San Diego Teachers,* therefore, does not directly answer the question whether PERB has exclusive jurisdiction over this action. It does, however, provide a starting point for analysis.

In reaching the conclusion that a superior court does not have jurisdiction to enjoin a strike by an exclusive representative, *San Diego Teachers* embraced the preemption doctrine developed by the federal courts under the National Labor Relations Act (29 U.S.C. § 151 et seq. [NLRA]). Noting the "marked similarities" between the NLRA and EERA, as well as the broad powers expressly conferred upon PERB in section 3541.5[11] this court concluded that the principles defining the preemptive reach of the NLRA are generally applicable in determining the scope of PERB's preemptive jurisdiction under EERA. (24 Cal.3d at p. 12; accord *Public Employment Relations Bd.* v. *Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 890-891 [186 Cal.Rptr. 634].)[12] Accordingly, it is to those principles this court must look in deciding whether EERA preempts the power of a superior court to entertain a tort suit for damages under the circumstances of this case.

Stated broadly, under the federal preemption doctrine, the National Labor Relations Board (NLRB) is held to have exclusive jurisdiction over activities arguably protected or prohibited by the NLRA. (*San Diego Unions* v. *Garmon* (1959) (*Garmon II*) 359 U.S. 236, 244-245 [3 L.Ed.2d 775, 782-783, 79 S.Ct. 773]; see also *Local 926* v. *Jones* (1983) — U.S. —, — [75 L.Ed.2d 368, 378-379, 103 S.Ct. 1453].) As the Supreme Court has explained on numerous occasions, the aim of this rule is to avoid conflict "in its broadest sense" in the regulation of labor-management relations, "conflict with [the] complex and interrelated federal scheme of law, remedy and administration." (*Garmon II, supra,* 359 U.S. at p. 243 [3 L.Ed.2d at p. 782]; accord *Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 197, 202-203 [56 L.Ed.2d 209, 225, 228-229, 98 S.Ct. 1745]; *Farmer* v. *Carpenters* (1977) 430 U.S. 290, 305 [51 L.Ed.2d 338, 353, 97 S.Ct. 1056]; *Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274, 285 [29 L.Ed.2d 473, 482, 91 S.Ct. 1909].)

---

[11]That section vests PERB with *exclusive jurisdiction* over unfair practices. (See *ante,* at p. 950.)

[12]Other courts, construing analogous public employment relations statutes, have reached this same conclusion. (See, e.g., *Lamphere Sch.* v. *Lamphere Fed. of Teachers* (1977) 400 Mich. 104 [252 N.W.2d 818, 824-827].)

Turning first to the arguably prohibited branch of the preemption doctrine, the Unions contend that the activity complained of by the District[13] arguably constitutes an unfair practice under EERA section 3543.6, subdivisions (a) and (b).[14]

The conduct complained of in the District's complaint is, of course, the Unions' strike. Count I charges the Unions with inducing teachers to strike and thus to breach their employment contracts with the District. Count II charges the Unions with engaging in an "illegal strike," and count III charges that the Unions, by engaging in a strike, forced the District to negotiate and enter into a collective bargaining agreement with them in violation of its duty to "meet and negotiate *with and only with* . . . exclusive representatives . . . ." (§ 3543.3, italics added; see also § 3540.1, subd. (h).)

The Unions first contend that the strike arguably could have involved a violation of section 3543.6, subdivision (b). This section makes it unlawful for a union "to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed them by [EERA]," including their rights to refuse to participate in union activity and to represent themselves individually (§ 3543).

PERB, the Unions suggest, might find that teachers were induced to participate in the strike at issue here against their will and by means prohibited by this section. Indeed, it might. In fact, in its unfair practice charge (and in its original complaint), the District alleged that the Unions engaged in coercive, threatening and intimidating conduct toward teachers during the strike. Moreover, under the test of coercion and intimidation which PERB has adopted, strike-related conduct will be found to violate section 3543.6, subdivision (b) not only when it is successful but also when, under the circumstances, it may reasonably tend to coerce or intimidate employees in the exercise of their rights. (*Fresno Unified School District* (Apr. 30, 1982) PERB Dec. No. 208, citing, e.g., *Local 542, International Union of Operating Eng.* v. *N. L. R. B.* (3d Cir. 1964) 328 F.2d 850.) Accordingly, the Unions' strike could be found to involve a violation of section 3543.6, subdivision (b).[15]

---

[13]At this stage in the proceedings, where the only question is PERB's jurisdiction, what matters is whether the underlying conduct on which the suit is based—however described in the complaint—may fall within PERB's exclusive jurisdiction. (*Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259, 269 [177 Cal.Rptr. 888]; cf. *Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, 292 [29 L.Ed.2d 473, 486].)

[14]The Unions do not base their claim on the EERA provisions upon which PERB's jurisdiction in *San Diego Teachers* was grounded for the simple reason that those provisions (§ 3543.6, subds. (c) and (d)) apply only to exclusive representatives.

[15]Having amended its complaint to eliminate specific mention of threats, coercion and the like, the District would have this court pay attention only to its last pleading. However, even on demurrer, a court is entitled to take into account matters, such as the District's unfair practice charge, which may properly be the subject of judicial notice. (See *ante,* fn. 6.)

Next, the Unions maintain that the strike arguably could have violated section 3543.6, subdivision (a). That section makes it unlawful for an employee organization to "[c]ause or attempt to cause a public school employer to violate Section 3543.5." Subdivision (d) of the latter section, in turn, forbids a public school employer from "contribut[ing] financial or other support" to a union.

The Unions reason that "meeting and negotiating" with a noncertified union constitutes unlawful support because a public school employer thereby accords a union which does not represent a majority of the employees in a unit the authority and status of an exclusive representative.

The assumption underlying this argument—that the representation rights afforded noncertified unions are not equivalent to the representation rights afforded exclusive representatives—appears well-founded. Exclusive representatives clearly have the right to "meet and negotiate" with a public school employer. (§ 3543.3.) Indeed, the term "meeting and negotiating" is defined in section 3540.1, subdivision (h) as a process engaged in by the public school employer and an exclusive representative in a good faith effort to reach a binding written agreement. Noncertified unions, on the other hand, are given only an undefined "right to represent" their members, a right which terminates upon the selection of an exclusive representative. (§ 3543.1.)

In construing analogous provisions of the State Employer-Employee Relations Act (§ 3512 et seq. [SEERA]), PERB has concluded that the "right to represent" conferred upon noncertified unions under SEERA (§ 3515.5) does not rise to the level of the right to engage in negotiations looking toward a binding written agreement which is granted to an exclusive representative (§§ 3517-3517.7). Rather, the "right to represent" encompasses a lesser right—the right to meet with and present proposals to the Governor or his or her designated representative. (*Professional Engineers in California Government (PECG)* (Mar. 19, 1980) PERB Dec. No. 118-S, 4 PERC ¶ 11045; see also *California State University (Sacramento)* (Apr. 30, 1982) PERB Dec. No. 211-H, 6 PERC ¶ 13115 [similarly construing the Higher Education Employer-Employee Relations Act (§ 3560 et seq. [HEERA])].) By parity of reasoning, then, it would appear that the "right to represent" given noncertified unions under EERA does not encompass the right to engage in negotiations looking toward a binding written agreement which is given to exclusive representatives.[16]

___

[16]In an early decision interpreting EERA, PERB (then known as the Educational Employment Relations Board [EERB], see §§ 3540, 3513, subd. (g)) held that a noncertified union's "right to represent" its members does not include even the right to meet with and present proposals to public school employers. (*San Dieguito Union High School Dist.* (Sept. 2, 1977) EERB Dec. No. 22, 1 PERC 369.) Although that case has not been expressly overruled (see *Professional*

Not only is the assumption underlying the Unions' argument well-founded, so too is the argument itself. The Unions' assertion that an employer contributes unlawful support by engaging in "negotiations" with a noncertified union finds substantial support in decisions of the federal courts interpreting section 8(a)(2) of the NLRA (29 U.S.C. § 158(a)(2)). Those decisions establish the general principle that the extension to a minority union of representation rights beyond those to which it is statutorily entitled constitutes unlawful support. (E.g., *Garment Workers* v. *Labor Board* (1961) 366 U.S. 731, 738 [6 L.Ed.2d 762, 768, 81 S.Ct. 1603]; *Pick-Mt. Laurel Corp.* v. *N. L. R. B.* (3d Cir. 1980) 625 F.2d 476, 482.)

Thus, two separate theories support the proposition that the Unions' strike was prohibited under EERA's unfair practice provisions.

This being so, only one question remains to be considered in deciding whether preemption is justified in this case under the arguably prohibited branch of the preemption doctrine. That question is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been . . . presented" to PERB. (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. 180, 197 [56 L.Ed.2d 209, 225].) As the United States Supreme Court has explained, "it is only in the former situation that a . . . court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board . . . ." (*Id.* at p. 197 [56 L.Ed.2d at pp. 225-226].)

A recent Supreme Court decision, *Local 926* v. *Jones, supra,* — U.S. — [75 L.Ed.2d 368], provides guidance for this case. There, the plaintiff sued a union in state court for causing his dismissal from a supervisor's position with a utility company. He contended that since federal labor law only prohibited a union from *coercing* an employer to discharge a supervisor, his state claim was distinct from that which he could have presented to the NLRB. Therefore, his state action was not preempted by federal law.

The Supreme Court rejected plaintiff's argument on three grounds. First, the court reasoned that to the extent that the state cause of action "cover[ed] coercive influence on the employer," it was identical to the federal unfair labor practice claim, and was, therefore, preempted. (*Id.,* at p. — [75 L.Ed.2d at p. 379].) Secondly, if the plaintiff's claim that the union noncoercively interfered with his employment relationship were permitted to go forward, it "would . . . require the state court to decide in the first instance whether the

_Engineers in California Government_ (_PECG_), _supra,_ fn. 8), its rationale was rejected in the SEERA case discussed above. In any event, the _San Dieguito_ holding only strengthens the Unions' argument here.

[u]nion's conduct was coercive, and hence beyond its" jurisdiction. (*Id.*, at p. — [75 L.Ed.2d at pp. 379-380].) The court held that "[d]ecisions on such questions of federal labor law should be resolved by the [NLRB]." (*Id.*, at p. — [75 L.Ed.2d at p. 380].) Finally, the federal and state claims required proof of the "same crucial element"—that the union caused plaintiff's dismissal. Thus, the court reasoned that the two controversies were "the same in a fundamental respect." (*Id.*, at p. — [75 L.Ed.2d at p. 380].)

In this case, strikes are an unfair practice under EERA only if they involve a violation of the act's provisions. (See *San Diego Teachers, supra,* 24 Cal.3d at p. 13.) As a result, the District argues that the issues which it could present in court are broader than the issues it could present to PERB. In the District's view, PERB would be concerned only with the existence of unfair labor practices—asserted to be a minor aspect of this case—and not with the harm to the District and to the public flowing from the allegedly illegal strike itself.

The District's argument fails for two reasons. First, the issue before PERB would have been whether the strike itself was unlawful as it was the means by which the Unions allegedly caused the district to meet and negotiate with them in violation of sections 3543.6, subdivision (a) and 3543.5, subdivision (d). Similarly, in its court action, the District challenges the legality of the strike itself. Thus, as in *Local 926,* the controversy presented in both forums may fairly be termed the same.

Second, and more fundamentally, the District's argument hinges on an assumption rejected by this court in *San Diego Teachers*. It "presupposes a disparity between public and PERB interests." (24 Cal.3d at p. 11.) As this court explained, "The public interest is to minimize interruptions of educational services. . . . [A]n identical concern underlie[s the] enactment of the EERA . . . . *PERB's responsibility for administering the EERA requires that it use its power . . . in ways that will further the public interest in maintaining the continuity and quality of educational services.*" (*Ibid.,* italics added.) Thus, there is little chance that PERB will ignore "the larger harm" involved in a teachers' strike. Moreover, it is equally clear that PERB has the authority to take steps to alleviate that harm in order to effectuate its duties and the purposes of the act. (§ 3541.3, subd. (n).)

Application of the arguably prohibited branch of the preemption doctrine is, therefore, fully justified in this case.

As an independent and alternative ground for finding the superior court's jurisdiction preempted, the Unions assert that their strike may be protected under EERA. They argue by analogy to decisions under the NLRA which

establish that a strike which is otherwise unlawful may be found protected if undertaken in response to employer unfair practices. (E.g., *Mastro Plastics Corp.* v. *Labor Board* (1956) 350 U.S. 270, 278 [100 L.Ed. 309, 318, 76 S.Ct. 349].)

While conceding that EERA does not provide express protection for economic strikes,[17] the Unions reason that strikes undertaken in response to unfair practices on the part of a public school employer—i.e., unfair labor practice strikes—may be ruled protected. That idea may seem anomalous. In fact, it is not. The proposition finds substantial support in this court's decision in *San Diego Teachers* which recognized that "EERA gives PERB discretion to withhold as well as to pursue" a remedy and that the overriding consideration is whether imposition of a remedy will effectuate the purposes of the act. (24 Cal.3d at pp. 12-13; see §§ 3541.5, 3541.3, subd. (n).)

The proposition also finds support in a decision of the Michigan Supreme Court interpreting that state's Public Employment Relations Act (see Mich. Comp. Laws Ann., § 423.201 et seq. [PERA]). Although Michigan's PERA expressly declares public employee strikes to be illegal,[18] the Michigan Supreme Court held, in *Lamphere Sch.* v. *Lamphere Fed. of Teachers* (1977) 400 Mich. 104 [252 N.W.2d 818, 824], that a public employer's conduct may convert an unlawful economic strike into a protected unfair practice strike. "[D]espite the illegality of [a] teachers' strike, [an] employer's conduct may convert the economic strike into an unfair practice strike" against which no remedy should be imposed. (*Ibid.*)

It is equally clear that some of the *employer* unfair practice provisions contained in EERA are as applicable to noncertified unions as they are to exclusive representatives. Section 3543.5, for example, declares that "[i]t shall be unlawful for a public school employer to . . . [¶] (b) [d]eny to employee organizations rights guaranteed to them by [the act]." "Employee organizations" are defined as including both noncertified unions and exclusive representatives. (§ 3540.1, subd. (d).) And, as previously noted, section 3543.1, subdivision (a) grants noncertified unions certain representation rights where, as here, no exclusive representative is present. Similarly, subdivision (d) of section 3543.5 prohibits employer interference with representation campaigns conducted by noncertified organizations.

---

[17]Section 3549 of EERA "excludes the applicability of Labor Code section 923's protection of concerted activities." (*San Diego Teachers, supra,* 24 Cal.3d at p. 13.) That section is generally understood to afford workers in the private sector a right to engage in economic strikes. (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 687-688 [8 Cal.Rptr. 1, 355 P.2d 905].)

[18]There is no provision in EERA prohibiting strikes by public school employees. (See *San Diego Teachers, supra,* 24 Cal.3d at p. 13.)

Thus, the strike at issue here may arguably involve unfair practices, if not on the part of the Unions then on the part of the District. In addition, the possibility of unfair practices on the District's side may properly be considered in determining the appropriateness of imposing a remedy against the Unions. Under these circumstances, this court can only conclude that the Unions are correct in their contention that the strike may constitute "arguably protected" activity.

This possibility provides a further reason for concluding that the District's tort causes of action are within PERB's exclusive jurisdiction. (Cf. *Lamphere Sch.* v. *Lamphere Fed. of Teachers, supra,* 252 N.W.2d at pp. 824-825.)

As the Supreme Court has explained, the arguably protected branch of the preemption doctrine "unquestionably requires that when the same controversy may be presented to the . . . court or the [Board], it must be presented to the Board. But [this rule] does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board," unless there is "a significant risk of misinterpretation of [the governing labor law] and the consequent prohibition of protected conduct." (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. at pp. 202-203 [56 L.Ed.2d at pp. 228-229], see discussion at pp. 199-202 [56 L.Ed.2d at pp. 226-228].)

Applying this rule to the case before this court, to the extent that the Unions' conduct is arguably protected, there exists a "potential overlap" between the controversy presented to the superior court here and the controversy that might have been presented to PERB. (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. at p. 200 [56 L.Ed.2d at p. 227].) Prior to granting the District an award of damages based on the Unions' strike, the superior court would of necessity have to decide whether the strike was protected under EERA. (See, e.g., *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 35 [112 P.2d 631].) Resolution of that question would require a decision as to whether the District had engaged in unfair labor practices. In a proceeding before PERB on an unfair practice charge, it too would have been required to make this same decision.

Moreover, it appears—at least under the circumstances of this case—that the Board could have obtained a PERB decision on whether the Unions' conduct was protected. It had only not to withdraw its unfair practice charge. In deciding whether a remedy should be imposed against the Unions, PERB could have investigated and determined whether the Unions' strike was protected.[19]

---

[19]In any event, if experience under the act reveals that protected strikes are more likely than unprotected ones, there would exist a "significant risk of misinterpretation" of EERA and "the consequent prohibition of protected conduct," which the Supreme Court has declared will alone

Thus, application of the arguably protected branch of the preemption doctrine is also fully justified in this case.

Having concluded that the Unions' strike was arguably protected or prohibited under EERA and that application of the preemption doctrine is fully justified under either prong, it follows that the superior court would not have had jurisdiction to enjoin the strike. (*San Diego Teachers, supra,* 24 Cal.3d 1; cf. *San Diego Unions* v. *Garmon* (*Garmon I*) (1956) 353 U.S. 26 [1 L.Ed.2d 618, 77 S.Ct. 607] [a court may not enjoin conduct arguably protected or prohibited by the NLRA].) Nor does it have jurisdiction to award the District damages arising out of the strike. (Cf. *Garmon II, supra,* 359 U.S. at pp. 246-247 [3 L.Ed.2d at pp. 783-784].)

EERA establishes a comprehensive scheme of law, remedy and administration through PERB. (*San Diego Teachers, supra,* 24 Cal.3d at p. 12.) In delimiting the areas of conduct which are within PERB's exclusive jurisdiction, the courts must necessarily be concerned with avoiding conflict not only in the substantive rules of law to be applied, but also in remedies and administration, if state policy is to be unhampered. The United States Supreme Court put the matter well when, 24 years ago, it made the following observation. "Nor is it significant that [the court] assert[s] its power to give damages rather than to enjoin what the Board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from . . . regulation [by the courts] if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. . . . [S]ince remedies form an ingredient of any integrated scheme of regulation, to allow the [courts] to grant a remedy . . . which has been withheld from the . . . Board only accentuates the danger of conflict." (*Garmon II, supra,* 359 U.S. at pp. 246-247 [3 L.Ed.2d at pp. 783-784].)[20]

### III.

Through the preemption doctrine "[b]oth federal and state courts seek to avoid conflicting adjudications which may interfere with [a labor] board's abili-

---

support a finding of preemption. (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. at p. 203 [56 L.Ed.2d at p. 229].)

[20]Exceptions to this rule are recognized. For example, conduct marked by violence may be enjoined or regulated through an award of damages under the traditional law of torts. (E.g., *United Workers* v. *Laburnum Corp.* (1954) 347 U.S. 656 [98 L.Ed. 1025, 74 S.Ct. 833].) None of the exceptions is, however, applicable under the circumstances of this case.

ty to carry out its statutory role, yet to permit court action when the board cannot provide a full and effective remedy." (*Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 75 [160 Cal.Rptr. 745, 603 P.2d 1341].) As set forth in the foregoing discussion, it is evident that strikes by noncertified unions involve a grave risk of such conflicting adjudications. It is equally evident that PERB can provide a "full and effective"—though not identical—remedy against such strikes.

PERB can assist in mediating employer-union differences when strikes occur or are theatened. It can seek injunctive relief, and if an injunction is violated, contempt sanctions may be sought. These remedies are far more likely to accomplish the Legislature's goal of "foster[ing] constructive employment relations (§ 3540)" and "the longrange minimization of work stoppages" than an after-the-harm-is-done award of damages. (*San Diego Teachers, supra,* 24 Cal.3d at p. 13.) Indeed, as the Michigan Supreme Court has explained, "To recognize alternative tort remedies would result in a substantial negative impact upon such purposes. It would encourage [precisely what happened here] . . . school board inaction. . . ." (*Lamphere Sch.* v. *Lamphere Fed. of Teachers, supra,* 252 N.W.2d at p. 830.)

Moreover, "[a] court . . . cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB." (24 Cal.3d at p. 13.) PERB, however, can, for "EERA gives PERB discretion to withhold as well as to pursue, the various remedies at its disposal." (*Ibid.,* fn. omitted.)

Accordingly, this court holds that EERA divests the superior courts of jurisdiction to entertain a school district's complaint for damages arising out of a teachers' strike led by noncertified unions. To paraphrase *San Diego Teachers,* PERB has exclusive initial jurisdiction to determine whether such a strike is an unfair practice and what, if any, remedies should be pursued.

The trial court's order sustaining the Unions' demurrer to the District's complaint and dismissing its action is affirmed.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**RICHARDSON, J.**—I concur in the judgment, but only under the compulsion of *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1 [154 Cal. Rptr. 893, 593 P.2d 838], in which I dissented.

As I explained in my dissent in that case, public employees' strikes are illegal in this state. (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 687 [8 Cal.Rptr. 1, 355 P.2d 905]; see

*Pasadena Unified Sch. Dist.* v. *Pasadena Federation of Teachers* (1977) 72 Cal.App.3d 100, 105-107 [140 Cal.Rptr. 41]; *Los Angeles Unified School Dist.* v. *United Teachers* (1972) 24 Cal.App.3d 142, 145, 146 [100 Cal.Rptr. 806]; *Trustees of Cal. State Colleges* v. *Local 1352, S.F. State etc. Teachers* (1970) 13 Cal.App.3d 863, 867 [92 Cal.Rptr. 134]; *City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308 [87 Cal.Rptr. 258]; *Almond* v. *County of Sacramento* (1969) 276 Cal.App.2d 32 [80 Cal.Rptr. 518].) This court should no longer continue its hesitant, tentative ritual dance around the perimeter of this central legal principle, but honestly, openly, and forthrightly enforce it. The Education Employees Relations Act (EERA) (Gov. Code, § 3540 et seq.) does not create any exception to this rule in favor of public school employees. Accordingly, it is my view that courts retain their traditional jurisdiction to restrain and punish illegal public strikes, and the Public Employment Relations Board (PERB) should be precluded from exercising exclusive jurisdiction over such strikes or from doing any act which either sanctions or encourages such unlawful conduct. (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at p. 20 [dis. opn.].)

Unfortunately, a majority of the court in *San Diego Teachers, supra,* 24 Cal.3d 1, ruled in favor of PERB's exclusive jurisdiction in illegal public employee strike cases. In the absence of some remedial legislation clarifying EERA or abrogating the majority's *San Diego Teachers* holding, the principles expressed in that case probably control here.

**GRODIN, J.**—While I concur fully in the opinion of the Chief Justice, which I have signed, I am inspired by Justice Richardson's concurring opinion to write a brief response. '

Justice Richardson takes the court to task for failing to recognize, and to "honestly, openly, and forthrightly enforce" what is, in his view, a "central legal principle" that "public employees' strikes are illegal in this state."

There is no denying the fact that the principle which Justice Richardson propounds finds verbal support in numerous judicial opinions, some of which he has cited, as a statement of the common law. With all respect, however, I suggest that California law pertaining to public employee bargaining has progressed beyond the common law stage, and that the Legislature has taken hold of the field in such a way as to cast substantial doubt upon the continuing validity (assuming it was once valid) of the familiar generalization concerning the illegality of public employee strikes.

That generalization got its start, in California, with a Court of Appeal decision in *City of L. A.* v. *Los Angeles etc. Council* (1949) 94 Cal.App.2d 36 [210

P.2d 305]. In that case, a group of building trades unions made various demands of the city's department of water and power. Among other things, they demanded a closed shop, reclassification of civil service positions to conform with craft jurisdictions and job classifications of the unions, and the fixing of pay in accordance with privately negotiated collective bargaining agreements. When these demands were not met, pickets were posted, and the union employees withdrew from work. The city obtained an injunction in the trial court, and the Court of Appeal affirmed.

The court began its analysis by observing that the constitutional protections which had been afforded strikes and picketing were subject to qualification for "illegality of purpose"; and this qualification extended to situations where the "illegality consists of violation of settled public policy." It was therefore necessary to consider the "peculiar nature of public employment, and particularly . . . the legal foundations of such employment in the Los Angeles Department of Water and Power." (94 Cal.App.2d at pp. 42-43.) That "peculiarity" consisted in the fact that "[t]he employer-employee relationship in the city's service is governed by statutory law and administrative regulation; it is not fixed, either in whole or in part, by contract, as in the field of private industry." (*Id.*, at p. 44.) Thus, it was "self-evident that defendants may not, consistently with the public policy expressed in the Los Angeles City Charter, lawfully either strike or picket for the purpose of enforcing demands as to conditions of employment in respect to which neither the city nor the department of water and power is obligated to bargain collectively. To hold to the contrary would be to sanction government by contract instead of government by law." (*Id.*, at p. 46.)

The premise underlying the court's opinion in *City of L.A.*—that it is necessarily contrary to public policy to establish terms and conditions of employment for public employees through the bilateral process of collective bargaining rather than through unilateral lawmaking—has since been rejected by the Legislature. The heart of the statute under consideration in this case, for example, contemplates that matters relating to wages, hours, and certain other terms and conditions of employment for teachers will be the subject of negotiation and agreement between a public school employer and organizations representing its employees. (Gov. Code, §§ 3543.2, 3543.3, 3543.7.) Thus, the original policy foundation for the "rule" that public employee strikes are illegal in this state has been substantially undermined, if not obliterated.

There are, to be sure, other policies which might be asserted in justification of a ban on public employee strikes, or at least some public employee strikes (see, e.g., Wellington & Winter, *The Limits of Collective Bargaining in Public Employment* (1969) 78 Yale L.J. 1107, and Justice Richardson's dis. opn. in

*San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1, 15-18 [154 Cal.Rptr. 893, 593 P.2d 838]), but these policies are, to say the least, highly debatable. (See, e.g., Burton & Krider, *The Role and Consequences of Strikes by Public Employees* (1970) 79 Yale L.J. 418; and, more recently, Hanslowe & Acierno, *The Law and Theory of Strikes by Government Employees* (1982) 67 Cornell L.Rev. 1055.) And the Legislature itself has steadfastly refrained from providing clearcut guidance. The Education Employees Relations Act, for example, while excluding the application of Labor Code section 923 (Gov. Code, § 3548 et seq.) does not expressly prohibit, or even mention, strikes. Under these circumstances, for courts to undertake resolution of the policy controversies through assertion of a blanket prohibition on strikes, independent of the statute and irrespective of the authority of the Public Employment Relations Board, seems quite inappropriate, even if constitutional.