[No. A061346. First Dist., Div. Two. May 26, 1994.]

CAROLYN C. ANDERSON et al., Plaintiffs and Appellants, v. CALIFORNIA FACULTY ASSOCIATION et al., Defendants and Respondents.

**COUNSEL**

Sandra Stanley for Plaintiffs and Appellants.

Rothner, Segall & Bahan and Anthony R. Segall for Defendants and Respondents.

**OPINION**

**HODGE, J.***—Appellants are three tenured Humboldt State University professors who were laid off after 10 to 22 years of teaching. They filed suit against California State University (CSU), Humboldt State University, the Trustees of the California State University and various individuals (the university defendants) and the California Faculty Association (CFA) (an employee organization that represents a system-wide unit of faculty employees of the California State University), and five individual union representatives (the union defendants).

The basis for the lawsuit against the university defendants is that the layoffs allegedly violated appellants' employment contract. Appellants have alleged the following causes of action against the university defendants: breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination (against CSU only), fraud, negligent misrepresentation of fact, libel and slander (against the individuals only), intentional and negligent infliction of emotional distress, and conspiracy. Appellants also request an injunction prohibiting their layoffs and for the cause to be arbitrated by the union defendants.

The basis for the claim against the union defendants is that they failed or refused to file grievances in response to the layoff notices. While appellants have joined the union defendants in all causes of action except those for

---

*Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.

wrongful termination and libel and slander, the essence of their claim against the union defendants is the refusal to file grievances in response to the layoff notices, i.e., a breach of the duty of fair representation. (See, *Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186] [court may disregard erroneous labels and look to facts alleged when ruling on a demurrer].)

Appellants appeal the judgment of dismissal following an order sustaining a demurrer filed by the union defendants. The basis for the court's ruling was that the Public Employment Relations Board (PERB) has exclusive jurisdiction over a claim against a union for breach of the duty of fair representation. Appellants' claims against the university defendants were not affected by the order.

## STATEMENT OF FACTS[1]

### *The Allegations Against the University Defendants*

The university made a series of program changes in the education department where appellants were tenured faculty members. The effect of the program changes was to remove certain courses from the education department. Rather than reassigning appellants to teach classes they are qualified to teach, the university hired untenured, part-time faculty from outside the university to teach the classes. Appellants were given notices of termination effective the end of the 1991-1992 academic year.

The terms of appellants' employment are governed by a memorandum of understanding (MOU) entered into between the Board of Trustees of California State University and the California Faculty Association, the exclusive representative for the bargaining unit including appellants. Appellants are the third party beneficiaries of this agreement. Appellants allege that their termination was in violation of article 38 of the MOU.

### *The Allegations Against Respondents*

Appellants allege that the union representatives breached their duty of fair representation in failing to file grievances based on the university's actions. They claim that the union representatives knew of the MOU violations as early as 1989 but "failed and refused, and continue to fail and refuse, to comply with CFA's duties of fair representation to [appellants] . . . ." After

---

[1]On appeal from a judgment of dismissal after a demurrer is sustained, we assume the truth of all facts properly pleaded by appellants. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

receiving the layoff notices, appellants tried to contact the union representatives for the purpose of filing a grievance based on their wrongful termination but were told that CFA would not process a grievance for them. On November 29, 1991, appellants received an undated general mailing from the CFA president stating that CFA was carrying grievances over recent layoffs of full-time tenured faculty. Appellants made "consistent, continuing efforts to clarify the status of the reassignments and grievance procedures," and concluded that the institution of formal procedures was "unnecessary, and possibly intrusive, inadequate, futile, or actually harmful."

On or about February 17, 1992, appellants learned that the union had not filed a grievance on their behalf. Appellants claim that when they learned this there was not enough time to file a formal grievance "in the short time remaining after CFA finally decided to tell us the truth."

On May 27, 1992, appellants filed grievances on their own.

### DISCUSSION

Appellants' superior court action is characterized in labor law jurisprudence as a "hybrid" case. In other words, they allege a breach of contract by the employer for violating the collective bargaining agreement, coupled with a breach of the duty of fair representation by the union representatives.

As will be more fully discussed below, an employee suing for an employer's breach of a collective bargaining agreement may file in superior court rather than seeking redress before PERB. However, PERB has exclusive jurisdiction to determine unfair labor practice claims, including a union's breach of the duty of fair representation.

At issue here is whether the superior court has jurisdiction over both claims in a hybrid action.

### *Historical Background*

"Over the past 20 years, the California Legislature has enacted a series of legislative measures granting public employees, at both the state and local level, a variety of organizational and negotiating rights somewhat analogous to the rights long afforded most employees in the private sector by the federal labor relation laws of the 1930's." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 173-174 [172 Cal.Rptr. 487, 624 P.2d 1215].)

In 1979, the Legislature added the Higher Education Employer-Employee Relations Act (HEERA) which is codified at section 3560 et seq. of the

Government Code.[2] The Legislature declared that the act was based on the "fundamental interest in the development of harmonious and cooperative labor relations between public institutions of higher education and their employees." (§ 3560, subd. (a).) HEERA is to be administered by the PERB. (§ 3563.)

In administering HEERA, PERB has certain rights, powers, duties and responsibilities, including, but not limited to, investigating unfair practice charges, holding hearings, subpoenaing witnesses, administering oaths, taking testimony or deposition of any person, issuing subpoenas duces tecum, and bringing an action in a court of competent jurisdiction to enforce any of its orders, decisions or rulings. (§ 3563.)

The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of HEERA, is a matter within the exclusive jurisdiction of PERB. (§ 3563.2.)

The union's duty of fair representation is defined in HEERA and the breach of that duty is listed as an unfair practice over which PERB has exclusive jurisdiction. Section 3578 states: "The employee organization recognized or certified as the exclusive representative shall represent all employees in the unit, fairly and impartially. A breach of this duty shall be deemed to have occurred if the employee organization's conduct in representation is arbitrary, discriminatory, or in bad faith."

Section 3571.1 lists seven unfair practices by the union or employee organization including the failure "to represent fairly and impartially all employees in the unit for which it is the exclusive representative." (§ 3571.1, subd. (e).)

■ Because violation of the duty of fair representation is defined in HEERA as an unfair practice, PERB has exclusive jurisdiction over any such dispute. (*Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666, 672 [169 Cal.Rptr. 893].)

In resolving charges of unfair practices, PERB has the power to "order . . . an offending party to cease and desist from the unfair practice and to take such affirmative action, . . . as will effectuate the policies of [HEERA]." (§ 3563.3.)

PERB does not, however, have exclusive jurisdiction over an individual employee's breach of contract claim. (§ 3563.2, subd. (b); Lab. Code,

---

[2]All further statutory references are to the Government Code unless otherwise indicated.

§ 1126; *Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259 [177 Cal.Rptr. 888].) Thus, appellants' claim that the university defendants breached the memorandum of understanding in terminating their employment may be brought before PERB or in the superior court.

We are aware of no California case which has decided whether, in a hybrid case, the superior court has jurisdiction over both an employee's claim for breach of contract against an employer and his claim alleging unfair representation by the union. We therefore look for guidance in federal case law construing the National Labor Relations Act (NLRA) and California case law construing HEERA on related issues of jurisdiction.

### The Garmon Doctrine

In the seminal case of *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the United States Supreme Court held that when the activity of an employer or employee that a state purports to regulate is arguably protected or prohibited by the NLRA, the state must defer to the exclusive (or "preemptive") jurisdiction of the National Labor Relations Board (NLRB) "if the danger of state interference with national policy is to be averted." (*Id.* at p. 245 [3 L.Ed.2d at p. 783].) The preemption doctrine does not apply, however, to activity that is of "peripheral concern" to the NLRA or "touch[es] interests so deeply rooted in local feeling and responsibility" that it could not be inferred that Congress intended to deprive the states of power to act. (*Id.* at pp. 243-244 [3 L.Ed.2d at p. 782].)

Thus, in *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657], the Supreme Court held that a federal court had jurisdiction over a libel action where allegedly false and defamatory statements about managers were made in a leaflet distributed by a union, since although the activity was arguably protected under NLRA, such a lawsuit would not interfere with the federal interest of permitting the free—and even heated—exchange of ideas during labor disputes. The court concluded that the action involved " 'merely [a] peripheral concern' " of federal labor law, and that an " 'overriding state interest' " in protecting its residents from malicious libels should be recognized. (*Id.* at p. 61 [15 L.Ed.2d at p. 589].)

Similarly, in *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056], the Supreme Court held that the NLRA does not preempt a local union member's state court action against the union for intentional infliction of emotional distress. In noting that the NLRA does not protect such "outrageous" conduct, the court commented: "Our cases indicate . . . that inflexible application of the [*Garmon*] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct

at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." (*Id.* at p. 302 [51 L.Ed.2d at p. 351].)

 A *Garmon*-like principle of preemption applies to potential conflicts of jurisdiction between California courts and agencies such as PERB which have exclusive jurisdiction over unfair practices. (*San Diego Teachers Assn. v. Superior Court* (1979) 24 Cal.3d 1, 12 [154 Cal.Rptr. 893, 593 P.2d 838].) The *San Diego* court noted that the aim of the *Garmon* rule is to "help bring expertise and uniformity to the delicate task of stabilizing labor relations." (*Id.* at p. 12.) In applying the doctrine, the courts " 'seek to avoid conflicting adjudications which may interfere with [a labor] board's ability to carry out its statutory role, yet to permit court action when the board cannot provide a full and effective remedy.' " (*El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946, 960-961 [192 Cal.Rptr. 123, 663 P.2d 893], quoting *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 75 [160 Cal.Rptr. 745, 603 P.2d 1341].)

The *Garmon* rule has been applied to various California cases involving labor disputes in public education. In all of the following cases the conduct complained of was arguably prohibited by the Education Employment Relations Act (which HEERA was patterned after) and it was held that PERB had exclusive initial jurisdiction to determine whether the conduct was an unfair practice: *Amador Valley Secondary Educators Assn.* v. *Newlin* (1979) 88 Cal.App.3d 254 [151 Cal.Rptr. 724] (school district salary freeze because of lack of salary agreement at start of school year); *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra,* 113 Cal.App.3d 666 (provision of collective bargaining agreement alleged to be contrary to Education Code, breach of duty of fair representation by union); *San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d 1 (strike that district sought to enjoin judicially may have been preceded by teachers' unfair practices); *El Rancho Unified School Dist.* v. *National Education Assn., supra,* 33 Cal.3d 946 (suit for damages arising out of strike); *Fresno Unified School Dist.* v. *National Education Assn., supra,* 125 Cal.App.3d 259 ("nominally tort" causes of action based on potential unfair practices arising out of strike).

At the same time, a principle of concurrent jurisdiction between California courts and PERB has been recognized. In *Fresno Unified School Dist.* v. *National Education Assn., supra,* 125 Cal.App.3d 259, the school district filed a complaint in superior court alleging conspiracy, interference with contract and breach of contract against the union and teachers for violating a promise not to strike. In holding that PERB and the superior court had

concurrent jurisdiction over the breach of contract action, the court relied heavily on California Labor Code section 1126, which predated EERA, and which specifically gives parties to a collective bargaining agreement the right to judicially enforce contract provisions.[3]

As to the tort causes of action (conspiracy and interference with contract), however, the *Fresno* court found the activity arguably constituted an unfair labor practice within the exclusive original jurisdiction of PERB. The torts were considered integrally related to a critical labor issue—the right to strike. The court contrasted this with the facts in *Farmer* v. *Carpenters, supra,* 430 U.S. 290, which involved the tort of intentional infliction of emotional distress, a "peripheral concern" to the labor dispute, best left to determination by the local community.

In considering the apparent conflict between the jurisdiction of PERB over unfair practices and the right of the parties to litigate their contractual rights, the *Fresno* court concluded that an "accommodation" was required. Accordingly, the trial court was directed to stay the contract claim for a reasonable period of time pending PERB's decision on the related nominal "torts."

The *Fresno* analysis was reaffirmed in *El Rancho Unified School Dist.* v. *National Education Assn., supra,* 33 Cal.3d 946, in which the court held that civil damage actions arising out of strikes are preempted by PERB while acknowledging that certain types of violent conduct in strikes are permitted to be redressed by court action. (*Id.* at p. 960, fn. 20.)

In *Rim of the World Teachers Association* v. *Rim of the World Unified School District* (Dec. 31, 1986) Ad-161 [11 PERC ¶ 18019 at p. 94], PERB concluded that the superior court had concurrent jurisdiction in a libel case involving statements made in a union newsletter concerning the conduct of a school board president during contract negotiations. PERB based the superior court's concurrent jurisdiction on the following: (1) no strike was involved (in contrast with the *Fresno, San Diego* and *El Rancho* cases) which would benefit from PERB's special expertise and which could be fully and effectively resolved by PERB; (2) the "nominally tort" causes of action in *Fresno* were integrally related to critical labor relations issue—the right to strike—unlike the peripheral concerns of intentional infliction of emotional distress (*Farmer, supra,* 430 U.S. 290) and the libel cause of action at issue;

---

[3]Labor Code section 1126 states: "Any collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by any party thereto shall be subject to the same remedies, including injunctive relief, as are available on other contracts in the courts of this State."

(3) PERB was unable to provide a full and effective remedy, i.e. an award of money damages; and, (4) there was some support in the case law for concurrent jurisdiction in libel cases (*Hotel & Restaurant Employees etc. Union* v. *Anaheim Operating, Inc.* (1978) 82 Cal.App.3d 737 [147 Cal.Rptr. 510], cert. denied (1979) 440 U.S. 914 [59 L.Ed.2d 464, 99 S.Ct. 1230]).

### Hybrid Case Jurisdiction

Appellants place substantial reliance on *Vaca* v. *Sipes* (1967) 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903]. In *Vaca*, the union member sued in state court alleging wrongful discharge by his employer in violation of the collective bargaining agreement and the union's arbitrary refusal to take his grievance to arbitration. The Supreme Court upheld the state court's exercise of jurisdiction over both claims against the challenge that the alleged conduct of the union was arguably an unfair labor practice and therefore within the exclusive jurisdiction of the NLRB.

These procedural similarities, however, do not justify the application of *Vaca* to this case. Here, we consider the preemptive effect of a state statute on the exercise of state court jurisdiction. By contrast, *Vaca* considered the preemption of state court jurisdiction by the NLRB. Also, the *Vaca* court noted specific congressional exceptions to the NLRB's exclusive jurisdiction (e.g., §§ 301 and 303 of the NLRA) and exceptions for activities "merely peripheral" to the concerns of the NLRA, concluding that the preemption doctrine "has never been rigidly applied to cases where it could not fairly be inferred that Congress *intended* exclusive jurisdiction to lie with the NLRB." (*Vaca* v. *Sipes, supra*, 386 U.S. at pp. 179-180 [17 L.Ed.2d at p. 851], italics added.) Moreover, in *Vaca*, the statutory scheme did not recognize the right to fair representation, or the proper forum for determination of a claimed breach of that duty.

Here, that legislative intent is clearly expressed. Section 3541.5 specifically provides "[t]he initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board."

Appropriately, *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra*, 113 Cal.App.3d 666, found that section 3541.5 accords to PERB exclusive jurisdiction for the resolution of disputes "which arguably could constitute an unfair practice claim," including unfair representation claims. (113 Cal.App.3d at p. 672.)

It is apparent, moreover, that the private sector context in which *Vaca* was decided substantially limits its application to the instant case. In *Karahalios*

v. *Federal Employees* (1989) 489 U.S. 527 [103 L.Ed.2d 539, 109 S.Ct. 1282], for example, the United States Supreme Court reviewed the *Vaca* decision in the federal public sector context. *Karahalios* concerned title VII of the Civil Service Reform Act (CSRA), which provides (1) that a union accorded exclusive bargaining rights ". . . is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership" and (2) that a breach of the duty of fair representation is an unfair labor practice. (5 U.S.C. §§ 7114(a)(1), 7116(b)(8).)

As here, the *Karahalios* court considered a comprehensive statutory scheme for the resolution of public sector labor disputes, noting that exclusive enforcement authority resided with the Federal Labor Relations Authority (FLRA) and concluding that there was no express nor implied basis for determining that Congress "intended to furnish a parallel remedy in a federal district court to enforce the duty of fair representation." (*Karahalios* v. *Federal Employees, supra,* 489 U.S. at p. 532 [103 L.Ed.2d at pp. 546-547].)

As here, the petitioners in *Karahalios* relied upon *Vaca,* urging that title VII "was modeled after the NLRA" and that a private cause of action to enforce the duty of fair representation was therefore "implicit" in the CSRA. The *Karahalios* court rejected this argument. "In the first place, Title VII is not a carbon copy of the NLRA, nor is the authority of the FLRA the same as that of the NLRB. The NLRA, like the RLA, did not expressly make a breach of the duty of fair representation an unfair labor practice and did not expressly provide for the enforcement of such a duty by the NLRB. That duty was implied by the Court because members of bargaining units were forced to accept unions as their exclusive bargaining agents. Because employees had no administrative remedy for a breach of the duty, we recognized a judicial cause of action on behalf of the employee. This occurred both under the RLA, *Steele* v. *Louisville & Nashville R. Co., supra*; *Trainmen* v. *Howard,* 343 U.S. 768 [96 L.Ed. 1283, 72 S.Ct. 1022] (1952), and also under the LMRA, *Syres* v. *Oil Workers,* 350 U.S. 892 [100 L.Ed. 1283, 76 S.Ct. 152] (1955); *Vaca* v. *Sipes, supra.* Very dissimilarly, Title VII of the CSRA not only expressly recognizes the fair representation duty but also provides for its administrative enforcement." (*Karahalios* v. *Federal Employees, supra,* 489 U.S. at p. 534 [103 L.Ed.2d at p. 548].)

As in *Karahalios,* we are guided by the legislative intent of a comprehensive statutory scheme. ■ We accede to the " 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." (*Karahalios* v. *Federal Employees, supra,* 489 U.S. at p. 533 [103 L.Ed.2d at p. 547].)

■ We perceive nothing in HEERA or the legislative history that suggests an implicit grant of jurisdiction to the state courts over a union's alleged unlawful labor practice merely because the aggrieved employee has chosen state court action to enforce his employment contract.

Beyond these concerns of statutory interpretation, we conclude that there is a sound basis in public policy for committing the determination of fair representation claims to the exclusive jurisdiction of PERB. Appellants' complaints against the union are not peripheral to the concerns of HEERA but rather go to the heart of the statutory scheme. The appropriate administration of employee grievances is central to effective labor management relations. The claims here are simply not analogous to those causes of action, like libel, intentional infliction of emotional distress, or assault, which have an impact on the community in ways which are not intrinsically related to labor management issues.

Further, it is apparent that the resolution of fair representation issues is a familiar task for PERB and one to which is brought a particularized expertise not found in the superior court. Upon an examination of the cases decided by PERB and reported in the California Public Employee Reporter in 1992, of 173 cases, 18 involved the duty of fair representation. In 1993, of 175 cases reported, 19 adjudicated fair representation issues. We conclude that PERB, rather than superior court, has more substantial experience in the adjudication of fair representation issues, and that no overriding state interests compel the ceding of jurisdiction to the superior court.

The *Vaca* court expressed justifiable concern about those instances in which virtually identical evidence would need to be adduced in separate forums. Here, the essence of appellants' case is the breach of contract and related torts by the university defendants. Appellants' central objectives are the return to their employment and the recoupment of lost wages. In superior court, appellants will prevail or not without regard to whether the unions negligently or purposefully declined to "carry their grievance."

In our view, the evidence pertaining to unfair representation will be substantially different from that pertaining to the other causes of action. We perceive no appreciable duplication of evidence in the respective forums.

Moreover, as noted in *Vaca*, any damages attributable to an employer's breach of contract are properly recoverable solely from the employer. "It could be a real hardship on the union to pay these damages, even if the union were given a right of indemnification . . . ." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 197 [17 L.Ed.2d at p. 862].)

Similarly, it is premature to suppose that PERB will be unable to fashion a full and effective remedy as to a union's breach of the duty of fair representation. In *Brammell* v. *San Francisco Classroom Teachers Association* (Nov. 13, 1984) PERB Dec. No. 430 [8 PERC ¶ 15215, at p. 990], an athletic coach was discharged from employment. The union filed a grievance and represented the employee at the first level conference with the school cipal. Thereafter, the union not only missed the filing deadline for the second step of the procedure, but also failed to seek an extension notwithstanding specific assurances that it would do so. Later, the union wrote to the district objecting to the manner in which a replacement coach had been hired, but did not initiate a formal grievance. PERB considered the "cumulative" derelictions of the union and held that ". . . in their totality, the Association's actions present a pattern demonstrating, at a minimum, an arbitrary failure to fairly represent Brammell in his employment relationship with the District." (*Id.* at p. 992.)

As in *Link* v. *Antioch Unified School Dist.* (1983) 142 Cal.App.3d 765, 769 [191 Cal.Rptr. 264], "[p]laintiffs contend that the PERB remedy is unsatisfactory or otherwise unworkable. We decline to speculate whether further judicial relief will be necessary or to what extent. Where, as here, an administrative remedy has been created, it must be exhausted despite plaintiffs' predictions. [Citations.]"

Further, we note the appellants have filed a grievance with the university specifically addressing those modifications in teacher qualifications which have precluded them from employment. In light of appellants' right to file a grievance under the terms of the MOU, it is difficult to imagine what damages an individual would suffer due to the union's breach which PERB could not adequately address. Therefore, appellants have been afforded adequate safeguards for the protection of their individual rights.

Further, as noted in *Vaca, supra*: "Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration . . . . [¶] If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined . . . . Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration." (*Vaca* v. *Sipes, supra*, 386 U.S. at pp. 191-1927 [17 L.Ed.2d at pp. 858-859].)

Fair representation cases determined by PERB regularly turn on whether the union has made an honest, reasonable determination that a grievance

lacks merit. Significantly, however, PERB may consider an individual grievance in the context of potentially competing interests of other employees, and in the context of the best interests of the bargaining unit as a whole. (Winograd, *California Public Employees and the Developing Duty of Fair Representation* (1987) 9 Indus. Rel. L.J. 410, 418-420.)

In *Mc Elwain* v. *Castro Valley Unified School Dist.* (Dec. 17, 1981) PERB Dec. No. 149 [5 PERC ¶ 12006], two teachers charged that the employer denied transfers based on seniority after negotiating a new transfer policy to implement a school reorganization plan. A PERB hearing officer found in favor of the grievants on the ground that the organization had not considered their individual cases when it declined to pursue grievances. PERB reversed, finding that the union had effectively considered the merits in a non-arbitrary, rational fashion by placing the claim in an overall, unit-wide context, concluding that success at arbitration would disrupt existing assignments and spark divisiveness among employees.

It is apparent that PERB has been accorded flexibility in considering fair representation cases that is beyond the ordinary reach of superior court jurisdiction. In superior court, the trier of fact is limited to consideration of the rights and obligations of the named litigants to the exclusion of the interests of other parties. Artful pleading can determine the scope of inquiry and the nature of the available relief. In our view, the administrative scope of a PERB proceeding is considerably less constrained and affords the potential for a realistic balancing of individual and collective interests from within the bargaining unit.

## Conclusion

We conclude that neither the language, nor the comprehensive structure of HEERA demonstrates any legislative intent to permit direct judicial enforcement of the union's duty of fair representation in hybrid cases. The coincidence that superior court jurisdiction appropriately has been invoked to enforce the terms of the collective bargaining agreement affords insufficient reason to deprive PERB of its mandated responsibility for adjudicating claims of unfair labor practices alleged against a union.[4]

---

[4]Appellants also argue that respondents are estopped from defending on the ground of lack of subject matter jurisdiction because of appellants' reliance on a general mailing which indicated that the union would be carrying grievances on behalf of all laid-off teachers. The doctrine of estoppel may not be invoked to cure a court's lack of subject matter jurisdiction. (*Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; *Public Employment Relations Bd.* v. *Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 890 [186 Cal.Rptr. 634].)

The judgment is affirmed.

Kline, P. J., and Phelan, J., concurred.