Filed 9/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| TEAMSTERS LOCAL 2010,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>        Defendant and Appellant. | A155188<br><br>(Alameda County<br>Super. Ct. No. RG17886561) |

Defendant Regents of the University of California (Regents) appeals from an order denying its special motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1]  The parties agreed that plaintiff Teamsters Local 2010 (Teamsters) filed an action that arose out of protected activity.  Regents argues the trial court erred in denying its anti-SLAPP motion after concluding Teamsters had demonstrated a probability of prevailing on its claim.  We affirm.

## I.  BACKGROUND

A. *Facts*

Teamsters is a labor union that represents skilled crafts employees at two of Regent's campuses: University of California Los Angeles (UCLA) and University of

---

[1] A strategic lawsuit against public participation, or SLAPP suit, is one which " 'seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.' " (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 404.)  "When a special motion to strike is filed, 'the trial court evaluates the merits of the plaintiff's claim using a summary-judgment-like procedure at an early stage of the litigation.' " (*Ibid*.)

California San Diego (UCSD). In 2017, it was campaigning to unionize the skilled crafts employees of University of California Davis (UCD).

During its campaign, Teamsters distributed a flyer making a number of statements about the impact that unionizing had upon the skilled crafts employees at UCLA and UCSD. In response, in May 2017, Regents distributed a flier to the skilled crafts employees at UCD entitled "HR Bulletin." The flier was issued through the Employee and Labor Relations Department at UCD, and stated:

"Dear Colleague,

"Currently there is an organizing campaign in progress for the Skilled Crafts Unit (K3) on the UC Davis campus. As previously stated, the University is neutral on the issue of unionization and supports the right of each employee to make an independent decision on whether or not to be represented by a union. The University believes that its role is to ensure that employees have the information they need to make an informed, voluntary choice and understand the process when faced with this important decision.

"The Skilled Crafts groups at both UCLA and UCSD had been in extensive contract negotiations, which had the effect of freezing salaries for several years. As a result, the initial increase provided by the new contracts had to account for multiple missed increases. This is an important distinction from the current status at UC Davis, where employees continue to receive annual merit increases based on performance.

"UC Davis is committed to paying its Skilled Crafts employees market-competitive wages. Additionally, UC Davis Skilled Crafts employees enjoy an average annual cost of $384 for comprehensive health benefits as compared to the average American workers who will pay more than $5,200 annually for less generous health benefits.

"It is also important to note that UC Davis has a complaint process located in PPSM-70 (outlined here) that acts as a grievance procedure for non-represented employees. At any time, you may file a complaint based on a specific management action.

2

"Thank you for all that you do for UC Davis.  We appreciate the contributions you make every day to honor our commitment to sustainability, serve students and enable our University to continue its world-class research."

B. *Lawsuit*

Teamsters filed an unverified civil complaint against Regents on December 19, 2017, alleging it had violated Government Code section 16645.6.  That statute prohibits a public employer from using state funds to "assist, promote, or deter union organizing."  A copy of the May 17, 2017 bulletin was attached as Exhibit 1 to the complaint.

C. *Anti-SLAPP Motion*

Regents filed an anti-SLAPP motion on February 20, 2018, arguing (1) the complaint arose from protected conduct in the form of a " 'written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest' " as well as " 'any other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public importance;' " and (2) Teamsters could not demonstrate a probability of prevailing on its claim because the action was preempted by the exclusive jurisdiction of the Public Employment Relations' Board (PERB) and in any event, nothing in Government Code section 11645.6 prohibited Regents from engaging in noncoercive speech.  (Code of Civ. Proc., 425.16, subds. (b)(1), (e)(3), (e)(4).)  Regents submitted a declaration under penalty of perjury by Stephen Green, the Executive Director of UCD's Employee and Labor Relations Department, explaining the reason for circulating the bulletin: "Department personnel, myself included, believed that it was necessary to provide UCD's skilled crafts employees with additional factual information so they could make more informed decisions about unionization."  A copy of the bulletin forming the basis of Teamsters's complaint was attached as Exhibit D to the declaration.

The trial court denied the motion.  It ruled the claim arose from activity protected under the statute, but Teamsters had a reasonable probability of prevailing on its claim. The court noted in its written order that Government Code section 16645.6 prohibited public employers from using state funds to "influence the decision" about whether to

3

support or join a union, regardless of whether the means used to do so were coercive. The court concluded its jurisdiction was not preempted by PERB, which had exclusive jurisdiction over unfair labor practices by Regents, because the bulletin was not coercive and was not alleged to be an unfair labor practice. The court noted that with respect to claims filed after January 1, 2018, the law had changed and PERB would have exclusive jurisdiction to determine the dispute. (See Govt. Code, §§ 3550, 3551, subd. (a), added by Stats. 2017, ch. 567, §1.)

## II. DISCUSSION

### A. *Anti-SLAPP Statute*

We review de novo an order granting a special motion to strike under Code of Civil Procedure section 425.16. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326.) In doing so, we independently determine each of the two prongs of anti-SLAPP analysis: (1) whether the defendant has shown that a cause of action arises out of an act done in furtherance of the defendant's exercise of a right to petition or free speech under the United States or California Constitution; and, if so, (2) whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056; *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.) The defendant bears the burden of proof on the first prong; the plaintiff on the second. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 15, 19; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768.)

The parties agree the current lawsuit arises out of protected activity, and we are concerned here with only the second prong of the analysis. In conducting our review, we do not weigh evidence or resolve conflicting factual claims. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.) Instead, we conduct a limited inquiry—akin to review of a summary judgment—into "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Id.* at p. 377.) We accept the plaintiff's evidence as true and evaluate the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. (*Ibid.*)

4

B.  *Violation of Government Code section 16645.6*

Under Government Code section 16645.6, "(a) A public employer receiving state funds shall not use any of those funds to assist, promote, or deter union organizing. [¶] (b)  Any public official who knowingly authorizes the use of state funds in violation of subdivision (a) shall be liable to the state for the amount of those funds."  Government Code section 16645 provides, " 'Assist, promote, or deter union organizing' means any attempt by an employer to influence the decision of its employees in this state or those of its subcontractors regarding either of the following:  [¶]  (1) Whether to support or oppose a labor organization that represents or seeks to represent those employees.  [¶] (2) Whether to become a member of any labor organization."  Government Code section 16645.8 allows a civil action for violation of this provision if the state Attorney General declines to bring a civil action within 60 days, with penalties and damages to be paid to the state treasury and a successful plaintiff being entitled to an award of attorney fees and costs.[2]

Government Code section 16645.6 was enacted in 2000 as part of Assembly Bill 1889.  In enacting Assembly Bill 1889, the Legislature stated, "It is the policy of the state not to interfere with an employee's choice about whether to join or to be represented by a labor union.  For this reason, the state should not subsidize efforts by an employer to assist, promote, or deter union organizing.  It is the intent of the Legislature in enacting this act to prohibit an employer from using state funds and facilities for the purpose of influencing employees to support or oppose unionization and to prohibit an employer from seeking to influence employees to support or oppose unionization while those employees are performing work on a state contract."  (Assem. Bill No. 1889 (1999-2000 Reg. Sess.) § 1.)

The bulletin sent out by Regents to skilled crafts employees fell within these provisions.  At least, a reasonable trier of fact could so find.  Regents complains there

_____

[2] The complaint filed by Teamsters alleges it asked the Attorney General to bring suit and the Attorney General failed to do so within 60 days.

5

was no evidence presented to show the bulletin was intended to or did in fact "deter" union organizing within the meaning of Government Code section 16645.6, but Government Code section 16645 specifically defines " '[a]ssist, promote, or deter union organizing' " as used in that section to mean "any attempt by an employer to *influence* the decision of its employees. . . ." (Italics added.) Although the bulletin was not coercive, in that Regents professed neutrality on the issue of unionization, couched the communication in terms of providing employees with facts, and did not threaten employees with reprisals if they unionized, a trier of fact could reasonably find the bulletin was an attempt to "influence" the employees who were on the receiving end. Stephen Green made this very point in his declaration, explaining that he and others at UCD decided to provide employees with additional facts so they could make a more informed decision about unionization. (See Black's Law Dict. (10th ed. 2014) p. 898 [defining "influence" as, among other things, "one or more inducements intended to alter, sway, or affect the will of another, but falling short of coercion"].)[3]

Regents cites Government Code section 3571.3, which provides, "The expression of any views, arguments, or opinions, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute, or be evidence of, an unfair labor practice under any provision of this chapter, unless such expression contains a threat of reprisal, force, or promise of benefit; provided, however, that the employer shall not express a preference for one employee organization over another employee organization." But while noncoercive communications falling under Government Code section 3571.3 will not qualify as unfair labor practices, such communications may still violate Government Code section 16645.6.

---

[3] Regents makes no argument that it was not a pubic employer receiving state funds. The University of California, of which UCD, UCLA and UCSD are a part and which is governed by Regents, is a public trust established pursuant to the California Constitution. (Cal. Const., art. IX, § 9.)

Regents argues Teamsters failed to make the required evidentiary showing of a probability of prevailing in its opposition to the anti-SLAPP motion, and that the court should not consider Green's declaration to fill in the gaps. We disagree. "We see no reason why [Green]'s declaration could not be considered in assessing [Teamsters]'s probability of prevailing on the claim. In summary judgment proceedings, gaps in a party's evidentiary showing may certainly be filled by the opposing party's evidence. [Citation.] This rule is based on the statutory command that the court consider " 'all the papers' " in making its ruling. [Citations.] [Code of Civil Procedure s]ection 425.16 similarly directs the court to consider both the 'supporting and opposing affidavits' when ruling on a motion to strike." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289.)[4]

Moreover, even if we do not consider Green's declaration or any of Regents's evidence, the bulletin on its face could be construed as an attempt to influence the employees to whom it is directed. The stated purpose of the bulletin is "to ensure employees have the information they need. . . ." The evidence thus supported the trial court's finding that Teamsters had a reasonable probability of prevailing on its claim that Regents violated Government Code section 16645.6.

C. *Preemption*

Regents argues that assuming the bulletin violated Government Code section 16645.6, Teamsters had no probability of prevailing on its claim because the superior court was not the proper forum. It argues that PERB had exclusive jurisdiction over the claim which preempts this lawsuit. Regents acknowledges there is no statutory provision granting PERB exclusive jurisdiction, but argues that Teamsters's claim is substantively

---

[4] We note that in *Salma*, the court also considered plaintiff's verified pleading as evidence showing a reasonable probability of prevailing. (*Salma*, *supra* 161 Cal.App.4th at pp. 1289–1290.) This aspect of the court's decision has been criticized in other cases. (E.g., *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 109, fn. 10; *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 474, fn. 8.) We need not consider the propriety of this part of the *Salma* court's ruling, because the conclusion that it is inappropriate to treat verified pleadings as the equivalent of evidence on an anti-SLAPP motion does not mean a court cannot look to both parties' evidence to fill in the gaps on one side.

7

one for violating a statute over which PERB has such jurisdiction. Some context is in order.

## 1. HEERA

" 'Over the past 20 years, the California Legislature has enacted a series of legislative measures granting public employees, at both the state and local level, a variety of organizational and negotiating rights somewhat analogous to the rights long afforded most employees in the private sector by the federal labor relation laws of the 1930's. [Citation.] [¶] In 1979, the Legislature added the Higher Education Employer-Employee Relations Act (HEERA) which is codified at section 3560 et seq. of the Government Code. The Legislature declared that the act was based on the 'fundamental interest in the development of harmonious and cooperative labor relations between public institutions of higher education and their employees.' [Citations.] [¶] In administering HEERA, PERB has certain rights, powers, duties and responsibilities, including, but not limited to, investigating unfair practice charges, holding hearings, subpoenaing witnesses, administering oaths, taking testimony or deposition of any person, issuing subpoenas duces tecum, and bringing an action in a court of competent jurisdiction to enforce any of its orders, decisions or rulings. [Citation.] [¶] *The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of HEERA, is a matter within the exclusive jurisdiction of PERB.* (§ 3563.2.)" (*Anderson v. California Faculty Assn.* (1994) 25 Cal.App.4th 207, 211–212 (*Anderson*), italics added.)

Government Code section 3571 defines unlawful (unfair) practices by an employer under HEERA. As relevant here, that section provides, "It shall be unlawful for the higher education employer to do any of the following: [¶] (a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter. . . . [¶] . . . [¶] (d) Dominate or interfere with the formation or administration of any employee organization."

8

As previously noted, Government Code section 3571.3, which is also a part of HEERA, provides, "The expression of any views, arguments, or opinions, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute, or be evidence of, an unfair labor practice under any provision of this chapter, unless such expression contains a threat of reprisal, force, or promise of benefit; provided, however, that the employer shall not express a preference for one employee organization over another employee organization."

In deciding whether something is an unfair labor practice, and whether PERB consequently has exclusive jurisdiction to hear a matter (Govt. Code, § 3563.2), we consider the underlying conduct on which the suit is based rather than a superficial reading of the pleadings. (*City and County of San Francisco v. International Union of Operating Engineers, Local 39* (2007) 151 Cal.App.4th 938, 945 (*Local 39*); *Fresno Unified School Dist. v. National Education Assn*. (1981) 125 Cal.App.3d 259, 269 ["Sophistication of pleading actions is not the key to jurisdiction. Preemption exists 'to shield the system (of regulation of labor relations) from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern' "].) In *Local 39*, this Court determined that it did not matter whether the plaintiff city attempted to characterize its claim against a union as the violation of mandatory charter provisions rather than an unfair practices charge over which PERB had exclusive jurisdiction: "The City may not, through artful pleading, evade PERB's exclusive jurisdiction." (*Local 39, supra,* at p. 945.)

2. NRLA Cases and Analogy to Preemption by PERB

Cases determining the scope of PERB's jurisdiction over unfair labor practices and considering claims of preemption sometimes look to cases discussing principles of implied preemption related to the federal National Labor Relations Act (NLRA; 29 U.S.C. § 151 et. seq.). (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 604 (*City of San Jose*); see also *El Rancho Unified School Dist. v. National Education Assn.* (1983) 33 Cal.3d 946, 953 (*El Rancho*); *San Diego Teachers Assn v. Superior Court* (1979) 24 Cal.3d 1, 12.) That law, although inapplicable directly

9

to state employers (*State v. Brotherhood of R.R. Trainmen* (1951) 37 Cal.2d 412, 418), forms the template for many of the statutes in HEERA.

Accordingly, the same rule of jurisdiction applies to PERB with respect to HEERA that the United States Supreme Court adopted with respect to the National Labor Relations Board (NLRB) in San Diego Bldg. Trades Council *v. Garmon* (1959) 359 U.S. 236, 244–245 (*Garmon*). (*City of San Jose* at p. 604; *Anderson*, *supra*, 25 Cal.App.4th at p. 214.) Applying the so-called rule of "*Garmon* preemption," an administrative agency such as PERB " 'is held to have exclusive jurisdiction over activities arguably protected or prohibited by' " the governing labor law statutes. (*City of San Jose*, at p. 604.)[5] "[T]he aim of this rule is to avoid conflict 'in its broadest sense' in the regulation of labor-management relations." (*El Rancho*, *supra*, 33 Cal.3d at p. 953, citing *Garmon* at p. 243.)

---

[5] A second preemption doctrine in NRLB cases, articulated in Intl. Ass'n of *Machinists & Aero. Workers v. Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132, held that state laws and state causes of action are preempted when they concern conduct that Congress intended to leave unregulated. (*Id*. at p. 140.) This doctrine has been applied in statutes involving a private employer's use of state funds to assist, promote or deter unionization and has been held to bar such provisions (*Chamber of Commerce of United States of America v. Brown* (2008) 554 U.S. 60 (*Brown*) ), but that case is inapplicable here because the relationship between private employers and their employees is governed by the NRLA and the court found Congress had expressly and implicitly indicated its intent to shield noncoercive employer speech about unionization from being regulated. (*Id*. at pp. 68–69.)

Regents has not argued that a *Machinists* type of preemption applies by analogy to the question of whether this claim regarding Government Code section 16645.6 should be heard by PERB. Nor could it do so successfully, when the California legislature, unlike Congress in the *Machinists* and *Brown* cases, did not clearly indicate its intent to leave the area of expenditure of government funds unregulated. In fact, it indicated the opposite in the statement of legislative intent accompanying Assembly Bill 1889, of which Government Code section 16645.6 is a part: "It is the policy of the state not to interfere with an employee's choice about whether to join or to be represented by a labor union. For this reason, the state should not subsidize efforts by an employer to assist, promote, or deter union organizing."

3. <u>Analysis</u>

Teamsters's complaint against Regents is based on Government Code section 16645.6, prohibiting Regents from spending public money on activities that "assist, promote, or deter union organizing." (Govt. Code, § 16645.6.) The Legislature has expressly provided that a civil action may be filed when a violation of that statute is alleged: "(a) A civil action for a violation of this chapter may be brought by the Attorney General, or by any state taxpayer, on behalf of the people of the State of California, for injunctive relief, damages, civil penalties, and other appropriate equitable relief. All damages and civil penalties collected pursuant to this chapter shall be paid to the State Treasury." If the Legislature had intended PERB to have exclusive jurisdiction over claims under Government Code section 16645.6, it would not have provided for this remedy.

Regents's argues that Teamsters's claim is subject to PERB's exclusive jurisdiction because it effectively alleged an unfair labor practice over which PERB has exclusive jurisdiction under principles of *Garmon*-type preemption. This ignores that by enacting Government Code section 16645.8, the California Legislature has expressly indicated that civil actions are not barred by PERB's jurisdiction over unfair practices. In any event, we disagree that *Garmon*-type preemption applies.

While a violation of Government Code section 16645.6 may in some cases prohibit conduct that is also an unfair labor practice, it does not necessarily do so. Government Code section 16645.6 targets a public employer's use of state funds to influence employees as to whether to support or oppose a labor union or whether to become a member of a union; use of private funds for this purpose would not be a violation. It is the spending of state funds for this purpose that is prohibited. Government Code section 3571, subdivision (a) makes it an unfair practice, whatever the source of funding, for a higher education employee to "interfere with . . . employees because of their exercise of rights guaranteed by this chapter." Subdivision (d) of that section provides that it is unlawful for a higher education employee to "[d]ominate or interfere with the formation or administration of any employee organization. . . ." An

11

attempt to influence employees on the issue of whether to support or join a union by providing information that is neutral and accurate may be a violation of Government Code section 16645.6 without "interfer[ing]" with employees or "dominat[ing]" or "interfer[ing]" with the formation of a union. (Govt. Code, § 3571, subds. (a) & (d).) A violation of Government Code section 16645.6 is not necessarily an unfair or unlawful practice under Government Code section 3571. Just as importantly, it is not alleged to be an unfair practice in this case.

Regents argues that PERB had exclusive jurisdiction because a noncoercive communication on the subject of unionization is arguable protected conduct under Government Code section 3571.3, which is a part of HEERA and exempts certain kinds of noncoercive communications from the category of unfair labor practices. That section does not grant any affirmative rights; it merely provides that noncoercive communications will not be the basis for an unfair labor charge. But no unfair labor charge is alleged in this case. PERB does not have exclusive jurisdiction over the claim.

D. First Amendment

Although Regents has argued that employers (including government employers) have a First Amendment right to communicate with their employees regarding the subject of unionization (see *Nadel v. Regents of University of California* (1994) 28 Cal.App.4th 1251, 1262), they do not argue that Government Code section 16645.6 is unconstitutional either on its face or as applied. We note that Government Code section 16645.6 does not directly prohibit public employers from engaging in any type of speech, but provides instead that state funds shall not be used to influence the decision of its employees as to whether to support or oppose a labor union or join a labor union.

E. Senate Bill 285

Effective January 1, 2018, the Legislature passed Senate Bill 285, which provides, "A public employer shall not deter or discourage public employees. . . from becoming or remaining members of an employee organization. . ." and grants PERB jurisdiction over violations of this statute. (Govt. Code, §§ 3550, 3551.) Neither party argues that these provisions, which were enacted after the current lawsuit was filed, governs the claim in

12

this case.  (Civil Code, § 3; *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 484 [statutes not retroactive unless a clear intent to make them retroactive clearly appears on the face of the statute, the legislative history or the circumstances of the enactment].)  We do not decide whether a claim under Government Code section 16645.6 that arose after January 1, 2018 would be subject to PERB's exclusive jurisdiction.

III.  DISPOSITION

The judgment is affirmed.  Teamsters shall recover its costs on appeal.

13

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

SIMONS, J.

*Teamsters Local 2010 v. Regents of the University of California /* A155188

14

A155188 / *Teamsters Local 2010 v. Regents of the University of California*


Trial Court:   Superior Court of Alameda County


Trial Judge:   Hon. Michael Markman


Counsel:       Sloan Sakai Yeung & Wong, Steve Cikes, Timothy G. Yeung, and Stephen Rowell for Appellant.


          Beeson Tayer & Bodine, Susan K. Garea for Respondent.